PeR CuRIAM.
 

 It appeared by the record in this case, that the plaintiffs, in the month of July, in the year 1796, purchased from the defendant a tract of land for the sum of $400 or some other sum, and .paid the consideration money. The defendant, at the time of the sale by him, had not completed his title by grant, and therefore gave his *bond to the plaintiffs to make them a good title at a future day. When defendant completed his title by grant, it was found that an elder grant covered a part of the land, and therefore, as to the part so covered, could not comply with the terms of his bond. To the part not. covered by the older grant, he made a good title to
 
 the
 
 plaintiffs, and the bond was put in suit against him to recover damages for the part not conveyed, in the County Court of Williamson, and a recovery had thereon at the January term of the said court, in the year 1811, in the sum of $4,883.20, being the then present value of the land, at the rate of $7.50 per acre. The defendant did not appeal, it being the common understanding of the country at the time of the recovery, and for some time before, that upon similar bonds the value of the land at the time of recovery was the proper measure of the damages, and so also were the decisions of the courts. In
 
 *383
 
 the fall of the same year, 1811, at the December term of the Supreme Court at Carthage, it was decided that the purchase money, .with interest thereon down to the time of the trial, and not the then value of the land, should be the measure of damages. After this decision, the defendant, Hadley, the judgment against him being unsatisfied, applied by petition to a circuit judge for a
 
 certiorari
 
 and supersedeas, assigning for cause the rule of law established by the said decision, which were granted on the 28th March, 1812, by the said judge, and returned to the May term of the Circuit Court of Williamson County, of the same year, the
 
 certiorari
 
 being filed in the office of said court the 4th of April preceding. At the return. term of the certiorari, to wit, May term, 1812, it was moved to dismiss the same, but continued upon advisement until November term, at which term it was continued for the same cause until May term, 1813, at which term the rule for dismissing the
 
 certiorari
 
 was discharged, and a new trial granted. To this opinion of * the court the plaintiffs excepted, and a bill of exceptions taken and signed in the usual form.. And, because it appeared by affidavit that an impartial trial could not be had in the county of Williamson, the venue was changed to Davidson Circuit Court, and a verdict there had for the plaintiff, May term, 1814, in the sum of $1,477.80. The plaintiff, by appeal in the nature of a writ of error, brought the cause up to this court.
 

 The principal question submitted to the court upon this case for their opinion is, whether the Circuit Court erred in discharging the rule to dismiss the certiorari, and granting a new trial. The
 
 certi-orari
 
 practice is now pretty well established, and its limits generally understood. Our first ideas of it were taken from North Carolina; there it was used in such cases as might otherwise, without its intervention, leave the party remediless by the then practice of that State. It was considered as an extraordinary remedy appealed to, to supply a defect of justice in cases obviously entitled to redress, and yet unprovided for by their forms of proceeding. Cases of this kind were recovered in a court of record, against conscience, the injustice of which did not appear upon inspection of the record, and of course would not be corrected by writ of error. The iniquity of them could only be detected by an examination of the facts upon another trial. The law, it is true, has prescribed for this purpose the appeal, a process given in that term only in which the recovery was had. But
 
 *384
 
 if by the act of the court, either oppressively or erroneously produced, the appeal was refused ; or if by the act of the clerk, negligently or willfully caused, the appeal was defeated; or if by the contrivance or procurement of the adverse party, the same result was procured ; or even if by inevitable accident, or the misfortune without blame of the party injured, he was prevented from the benefit of a second investigation of the facts of the cause, by the * prescribed mode of appeal, the
 
 certiorari
 
 was resorted to as the substitute for redress. But in all these cases, it behooved the party praying the benefit of this extraordinary remedy to have merits on his side, and to pursue it in proper time. Time has always been considered-as an important circumstance to be attended to in the
 
 certiorari
 
 practice, both in this State and the State of North Carolina; and that the redress by this means should be followed up as soon as possible after the happening of the occurrence which rendered it necessary to have resort to it. Every reason which may be presumed to have influenced the Legislature to limit the use of appeal by time, is applicable to the
 
 certiorari.
 
 A remedy which in numerous cases of oppression and injustice, of fraud and circumvention, and where the corrupt conscience of a party would not otherwise be reached or effectually appealed to, hath been by numerous decisions admitted necessary to exist; but it hath been admitted also to be equally necessary that this remedy should be pursued in convenient time, otherwise a series of evils would be introduced not less injurious to society than those intended to be remedied. Were it competent for the party at a late period to apply for and obtain this writ, when or where would be the end of judicial controversy ? The vexation, the uncertainty, the doubts, and the expense of carrying a cause through different courts would be aggravated, the probability of loss of testimony by death of witnesses, by death of parties, and other embarrassments necessarily incident to a protracted litigation, would be greatly increased ; and the chances of correcting the decisions, and purging it of its wrongs, the object aimed at, would be lessened in proportion to the staleness of the application. Hence the court at Carthage
 
 last
 
 term, were unanimously of opinion that the application for this writ should be made at or before the first term of the revising court after the trial below, unless in some extraordinary cases, of* which the court should be fully satisfied. This precludes the lati
 
 *385
 
 tude contended for in the present case, and the present court, in reviewing the case at Carthage, approve of the limitation there recognized and adopted. The case now before the court is as favorable a one as can be well conceived for claiming a relaxation in the above rule, and we fully feel the situation of the defendant resulting from the circumstance of having his cause tried in the beginning of the year 1811, instead of the latter part of that year, or at most the beginning of the next. But cases of individual hardship must yield to the public
 
 good;
 
 and the rule of law, once established, must be uniform in its operation. It hath been argued, in order to show that the decision at Carthage ought to be extended, that this writ by our law is a constitutional writ, given in civil cases by express words, both to Superior and Inferior Courts, for the removal of causes from inferior jurisdictions upon sufficient cause, supported by oath or affirmation' (Constitution, art. 5, §§ 6, 7), to which no limitation of time is annexed; that it therefore, is argued, deserves consideration, and is a matter of delicacy to say that the court will impose a limitation when the Constitution hath not thought proper to do so. To this it is answered, that at the time of the adoption of our Constitution, the State of North Carolina, of which we had previously formed a part, had not so sufficiently and firmly established its
 
 cer-tiorari
 
 practice, as not to have it disputed ; it was opposed a long time in that State by the ablest counsel, and even then continued to be so opposed. The
 
 certiorari
 
 seemed to the framers of our Constitution a matter of too much consequence to the interests of society, to hazard its establishment, as in North Carolina, with the courts, assailed as it was; and therefore at once secured its existence and the outlines of its use by constitutional provision ; thereby settling the question agitated in North Carolina, as far as it regarded this State. But it seems to * me the Constitution regarded nothing further than what was expressed, leaving the particular application of it to the discretion of the courts of the State, upon questions as they should arise in their different bearings upon society. It is believed the construction of the Constitution, as contended for by the defendant in error, would not comport with the views of its framers; to extend the limits of its application indefinitely, would be productive of the greatest evils to society; to extend it further than the case at Carthage has done, is considered unsafe, and might hazard the repose and quiet of the country. We,
 
 *386
 
 in the spirit of the framers of the Constitution, are friendly to the certiorari, and therefore wish to support it; but we consider this to be best effected by not enlarging the field of its operation, but by confining it within its present bounds. We are therefore of opinion, on this point, that the Circuit Court of Williamson County erred in discharging the rule for dismissing the
 
 certiorari
 
 in this record, and that it erred in granting a new trial in the cause. We conceive it to be unnecessary to give any opinion on the second point made by the counsel, as the first very properly governs the case.
 

 See
 
 Durham
 
 v.
 
 United States,
 
 4 Hay. 69, and note
 
 sub. fin.; Trigg
 
 v.
 
 Boyce,
 
 4 Hay. 100, and
 
 note sub fin.
 
 See King’s Digest, 1852, 1855, 1897, 1908, 1936, 1938. As to the
 
 measure of damages on covenants to convey,
 
 there seems to have been some fluctuations in the early decisions, but the question is finally settled in
 
 Elliott v. Thompson,
 
 4 Hum. 99, in accordance with the above case of
 
 Perkins
 
 v.
 
 Hadley.
 
 See King’s Digest, 5112
 
 et seq.